IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| DAVID COLOMBIA and ALISA COLOMBIA,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, and SENTRY CREDIT, INC.,<br><br>　　　　　　Defendants. | Case No.: 1:24-cv-02522-NYW-SBP<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION** |

Plaintiffs, David Colombia and Alisa Colombia ("Plaintiffs") respectfully submit this Opposition to Defendant Experian Information Solutions, Inc.'s ("Experian") Motion to Compel Arbitration [Dkt. No. 36, the "Motion"].

## I. INTRODUCTION

Experian filed a boilerplate motion – indistinguishable from the motion it currently files in the majority of the myriad consumer cases filed against Experian in federal court – supported only by a conclusory declaration from an operations director employed at Experian's sister-company. On that paltry record, Experian seeks to force Plaintiffs to forego this legal action and pursue the same in a private arbitration venue. For such a serious and substantial demand – the stripping away of a consumer's Congressionally established right to a federal jury trial – the Court should demand commensurate evidentiary support; support not found in Experian's motion. Further, and in the alternative, the sign-up process described by Experian is facially insufficient for a showing of mutual assent, a fundamental requirement for finding contract formation. For these reasons, the Court should deny Experian's Motion.

1

## II. **LEGAL STANDARD**

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 648 (1986). The Supreme Court has held that arbitration agreements are to be on the same footing as other contracts, with no special rules applicable to them. *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012).

A motion to compel arbitration is reviewed under a similar standard as that applicable to a motion for summary judgment. *Id.* Where "the parties dispute the existence of an agreement to arbitrate, a court may grant a motion to compel arbitration if there are no genuine issues of material fact regarding the parties' agreement." *Id*. Courts should also "give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Id.* Under the summary judgment standard, "the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement." *BOSC, Inc. v. Bd. of Cty. Comm'rs of Cty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017).

To determine whether a party has agreed to arbitrate, "courts generally [] should apply ordinary state-law principals that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Contract formation in Colorado requires evidence 'that the parties agreed upon all essential terms.'" *Ragab v. Howard*, 2015 U.S. Dist. LEXIS 148301 (*quoting I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986)). "The parties' agreement is evidence by their manifestations of mutual assent." *Ragab* at 12.

2

**III.   ARGUMENT**

On the evidentiary record before the Court, Experian cannot bear its burden of proving the formation and existence of a binding arbitration agreement. The only "evidence" that is presented by Experian to fulfill its burden is inadmissible and fails to counter Plaintiffs' allegations that they never saw – much less assented to – any agreement to strip their rights to a federal jury trial and would not have assented to the same had they seen such. *See* Exhibit 1, Declaration of David Colombia ("David's Decl."), and Exhibit 2, Declaration of Alisa Colombia ("Alisa's Decl."). Absent Experian producing documentary evidence substantiating its claims, the present dispute ends there.

However, there is more. Even accepting, at face value, the inadmissible statements in Smith's declaration, the clickwrap agreement purportedly utilized by Experian to lure the Plaintiffs into waiving their rights to a federal jury trial is insufficient to support a finding of assent on the part of the Plaintiffs. Thus, Experian's Motion should be denied.

**A.  Smith's Declaration Fails to Meet Minimum Evidentiary Standards for Admissibility and Cannot be used to Support Experian's Motion.**

The Federal Arbitration Act ("FAA") provides that a court may compel arbitration only "upon being satisfied that the making of the agreement or the failure to comply therewith is not at issue." 9 U.S.C. § 4. Any evidentiary burden on the party opposing arbitration "only arises, however, after the proponent produces **credible, admissible evidence which satisfies the Court that there was an arbitration agreement**." *Dillon v. BMO Harris Bank, N.A.*, 173 F. Supp. 3d 258, 264 (M.D.N.C. 2016) (citing 9 U.S.C. §4) (emphasis added). The **sole** piece of evidence proffered by Experian to satisfy its burden of proving formation of an agreement to arbitrate is that of a declaration signed by Smith [Dkt. No. 37, the "Smith Decl."], an employee of "Experian Consumer Services" ("ECS"), a sister-company to Experian. *See* Smith Decl., at ¶ 1.

3

Rule 43 allows courts to consider affidavits when deciding motions that rely on facts not present within the record. Fed. R. Civ. P. 43(c). However, the admissibility of an affidavit demands adherence to stringent criteria. An affidavit must present specific facts based on personal knowledge: "Obviously, an affidavit which merely states that the affiant was 'apprised of certain information' should be given little, if any, weight." *Oce' v. Coleman*, 487 F. Supp. 548, 550 n.1. (N.D. Ill. 1980) (citing *Transo Envelope Co. v. Murray Envelope Co.*, 227 F. Supp. 240, 242 (D.N.J. 1964)). An affidavit further may not rely on any facts which are not within the personal knowledge of the affiant. *See Jackson v. Foodland Super Mkt., Ltd.*, 958 F. Supp. 2d 1133, 1140 (D. Haw. 2013) ("A district court will not consider an affidavit that is not based on personal knowledge.").

Indeed, "[A]ffidavits [...] used to support or oppose a motion must be made on personal knowledge [...]. Personal knowledge means the affiant's testimony is based on the affiant's actual perceptions or observations as opposed to 'statements of mere belief.'" *Nuss v. Utah Orthopaedic Assocs., P.C.*, No. 2:09-CV-647 TS, 2011 U.S. Dist. LEXIS 85168, at *1-2 (D. Utah Aug. 2, 2011).

Rule 43 does not explicitly detail the requirements for an affidavit or declaration to be considered in connection with a motion. However, within the Tenth Circuit, motions to compel arbitration are analyzed similar to the summary judgment standard. *Hancock,* 701 F.3d 1248 at 1261. Consequently, Rule 56's treatment of declarations applies neatly. Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Federal Rule of Evidence 602 provides additional reinforcement for this requirement ("a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has

4

personal knowledge in the matter"), and Federal Rule of Evidence 1101 asserts that the Federal Rules of Evidence apply to all proceedings in federal court. Thus, Rule 43 affidavits like Smith's must be based on personal knowledge, detail facts admissible in evidence, and establish the affiant's competency. *See* Fed. R. Civ. P. 56(c)(4).

Smith is purportedly the "Director of Product Operations for […] Experian Consumer Services[.]" *See* Smith Decl. ¶ 1. Smith's position does not and cannot validate what appeared on Alisa Colombia's unknown electronic device on September 27, 2020, or David Colombia's unknown electronic device on October 7, 2020, when Alisa Colombia and David Colombia allegedly signed up for their respective CreditWorks accounts. Smith claims, "the facts stated in [his] Declaration are of [his] own personal knowledge," but concedes that all of his "personal knowledge" comes from his review of unidentified "pertinent data and documents" and Experian's "internal records." *Id*., at ¶ 1. Smith's declaration is deliberately vague, avoiding any specificity as to identification of any documents. Based on his review of these unknown and unnamed documents, Smith declares that: 1) Plaintiffs enrolled in CreditWorks; 2) Plaintiffs each completed a single "webform" which collected the Plaintiffs' personal information; and 3) the Plaintiffs accepted and agreed to Experian's Terms of Use Agreement by clicking a button labelled "Create Your Account" at the bottom of the "webform." *Id*., at ¶ 3.

The deficiencies in Smith's declaration are glaring. He does not provide, or even so much as reference, any documents which substantiate his assertions about Plaintiffs' respective interactions on any website, the nature of the allegedly accessed webforms, or the contents of any hyperlinks allegedly clicked by Plaintiffs in 2020. *Id*., at ¶¶ 3-4. His assertions about his "personal knowledge" and what the Plaintiffs "would have had to" do approximately four years ago are utterly speculative statements and wholly unsupported by any tangible evidence. Smith neither

5

cites to nor includes as evidence for his statements **any** internal records establishing the IP address of the device allegedly used on September 27, 2020 and October 7, 2020, demonstrating an audit or activity log for that IP address, or any other record which in any way could prove to a reasonable jury that Plaintiffs did, in fact, view and agree to the agreement Experian seeks to enforce here.

If Smith stood before this Court and attempted to provide the testimony from his declaration at trial, truly little of his statements would be admissible under Federal Rule of Evidence 602, as they do not constitute evidence "sufficient to support a finding that [Smith] has personal knowledge" concerning what Alisa Colombia and David Colombia respectfully accessed, saw, or clicked on September 27, 2020 and October 7, 2020. *See* Fed. R. Evid. 602. Smith never establishes that he has ever viewed Plaintiffs visiting the unknown website at any point, much less over four years ago. Smith never states that he witnessed the operation of the unknown website at any time or even reviewed a specific document setting forth the operation of this website.

Smith's assertion of "personal knowledge," as he outlines within his declaration, is based on the ambiguous claim that such knowledge was acquired by Smith "in the course and scope of [his] job responsibilities and through the review of […] documents." Smith Decl., at ¶ 1. His declaration characterizes his responsibilities as "supporting the consumer enrollment process into CreditWorks and related services." *Id.* Such responsibilities apparently require that Smith be "familiar" with "ECS's electronic databases that store consumer enrollment information, including the webpages a consumer would have encountered to complete their enrollment into CreditWorks, the personally identifiable information entered when enrolling, which buttons the consumer would have clicked on in the enrollment process, and date and time of the consumer's acceptance of the Terms of Use." *Id*.

6

However, it is unclear and unestablished how Smith obtained or even could obtain **personal** knowledge of what webpages a consumer would have encountered absent being present with the consumer at that moment – a claim not asserted by Smith. Instead, all of Smith's statements concerning his "familiarity" with the Experian websites boil down to Smith's speculations about what the Plaintiffs must have done. But a witness' professed knowledge **must** be derived from direct experience or observation. Smith's declaration violates the fundamental legal requirement that "an affiant must testify about what he observed himself and **not speculate about what he thinks happened**." *AmTRAN Tech. Co. v. Funai Elec. Co.*, No. 08-cv-740-bbc, 2009 U.S. Dist. LEXIS 35330, at *8 (W.D. Wis. Apr. 27, 2009) (emphasis added); *see also*, *Alpha Prime Dev. Corp. v. Holland Loader Co.*, LLC, Civil Action No. 09-cv-01763-WYD-KMT, 2010 U.S. Dist. LEXIS 67591, at *2-3 (D. Colo. July 6, 2010) (explaining "Federal Rule of Civil Procedure 56(e)(1) requires that an affidavit supporting or opposing [a motion for summary judgment] [...] be made on personal knowledge [...] and show that the **affiant** is competent to **testify** on the matters stated."; "Under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or **observed** that to which he **testifies** to."; "Accordingly, at the summary judgment stage, statements of mere belief in an affidavit must be disregarded.") (quoting *Argo v. Blue Cross and Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1200 (10th Cir. 2006) (internal quotation marks omitted)).

Stated bluntly, Smith could not **possibly** possess "personal knowledge" sufficient to make the statements contained in his declaration. Smith does not know Plaintiffs. Smith has never met the Plaintiffs. Smith was not present when the Plaintiffs allegedly agreed to the terms and conditions with which Experian seeks to bind the Plaintiffs. Smith is nothing more than a glorified custodian of records; **records which Experian has thus far refused to produce**. Thus, Smith has

7

no personal knowledge of whether the Plaintiffs ever agreed to the arbitration agreement at issue and his conclusory statements of the same clearly lack foundation.

Experian's tactic of choosing an employee at random to swear to facts outside their personal knowledge in support of a motion to compel arbitration is not new. Indeed, Smith's declaration is practically identical to countless other declarations filed in support of practically identical motions throughout the country. Increasingly over the past two years, district courts have begun to find Experian's declarations insufficient. In the first judicial opinion to contain a substantive, reasoned analysis on this issue, a federal judge called Experian out on this very practice.

> Experian's [motion to compel arbitration] must be denied because it lacks sufficient evidence to provide that [the plaintiff] agreed to the arbitration agreement on which Experian relies. Experian's position is quite strange on the simple issue to be resolved. Austin says, under oath, that he did not agree to arbitrate. To prove otherwise, Experian relies on an explanation purporting to show how it was that a person (such as [the plaintiff]) trying to acquire the free credit report (promised on the website of Experian's related company) can use a website and, in so doing, can unknowingly agree to forego his right to proceed in court against Experian by agreeing to arbitrate with a third party that was not even identified as Experian. Experian chose to undertake that burden by relying on [an affidavit]. Having done so, Experian knew that the [affidavit] had to be based on personal knowledge. Fed. R. Civ. P. 56(a); 56(c)(4). **But that requirement was not met.**

*Austin v. Equifax Info. Servs., LLC*, Civil Action No. 3:22cv707, 2023 U.S. Dist. LEXIS 223258, at *20 (E.D. Va. Dec. 13, 2023); (emphasis added).[1] In *Austin*, the court excluded the declaration of a different Experian employee, David Williams ("Williams"), which declaration was substantively identical to the declaration now provided by Smith. *See generally*, Exhibit 4 ("Williams Decl.").[2] The *Austin* court did so in relevant part because "Williams **failed to identify the documents on which he based his asserted personal knowledge.** He did not identify them

---

[1] A copy of the *Austin* Memorandum Opinion is attached hereto as Exhibit 3 for ease of review by the Court.
[2] In fact, multiple paragraphs from the declarations provided by Smith and Williams contain identical text.

8

in the Williams Affidavit itself, **nor did the defense provide them** or even identify their existence **when requested** to in discovery." Ex. 3, at 11 (emphasis added). The same facts exist here, where the undersigned requested that Experian provide the documents explicitly relied upon by Smith in obtaining his "personal knowledge" of what allegedly occurred on an unidentified website over four years ago. *See* Exhibit 5, Declaration of James Ristvedt ("Ristvedt Decl."). This search for documentary evidence supportive of Experian's position has thus far been fruitless and deliberately thwarted by Experian and its conduct.

Tellingly, when Experian was **twice** given the chance in *Austin* to supplement its production with **any** of the documents relied upon by the declarant, it refused to do so, instead filing an identical motion and asking the judge to deny the same so that the exclusion of the declaration from Williams could be immediately appealed. *See* Ex. 3, at 14. Understandably, Senior Judge Payne found "Experian's position […] quite strange on the simple issue to be resolved." *Id* at 19. Indeed, it is nothing short of baffling that Experian withholds these mysterious documents upon which it apparently relies and simply refuses to produce them to anybody.

Here, as in *Austin*, the parties disagree on the formation of an arbitration contract. As here, Experian has the burden of proving such formation and made a litigation decision to rely solely upon an inadmissible declaration that explicitly incorporated documents which were "not identified so that the Court could test the merits of the asserted personal knowledge claimed to be based on them." *Id.* When the *Austin* court found that such evidence was insufficient and that "Experian did not meet [its] burden initially" Experian "turned down two invitations to do so after being told that it had failed on the first go round[.]" *Id.*, at 21. Commenting on Experian's bizarre conduct, the court noted, "Experian has a history of difficulty in complying with the FCRA [and]

9

it is passing strange that Experian would forego two opportunities to demonstrate that its system is transparent, rather than, as [the plaintiff] claims, very deceptive." *Id.*, at 21 n.5.

Why then, when Experian is **repeatedly** asked to produce evidence that it claims not only exists but is also within the possession of Experian, does Experian **repeatedly** refuse to produce such documentation or even provide a justification for its refusal? Occam's razor would answer with the simplest conclusion: such documents do not exist. Instead, Experian has been seeking to compel arbitration *en masse* in federal consumer cases with a copy and pasted declaration void of any actual, evidentiary proof that those consumers manifested any assent to waive their federal rights.

Regardless, the statements in the declaration from Smith are inadmissible for want of Smith's personal knowledge and therefore cannot support Experian's assertion of valid formation of an agreement to arbitrate. The same conclusion was recently reached by and the United States District Courts for the Southern District of Georgia and the Middle District of Florida. *See Newton v. Experian Info. Sols., Inc.*, No. CV 623-059, 2024 U.S. Dist. LEXIS 128278 (S.D. Ga. July 18, 2024); *Lamonaco v. Experian Info. Sols., Inc.*, No. 6:23-cv-1326-PGB-LHP, 2024 U.S. Dist. LEXIS 71551 (M.D. Fla. Apr. 19, 2024). In *Newton,* the court found the Smith Declaration "insufficient to establish he has personal knowledge of whether Plaintiff assented to the Terms of Use Agreement." 2024 U.S. Dist. LEXIS 128278, at *10. The *Newton* court took issue with a multitude of shortcomings in the Smith Declaration. First, as here, the supporting documentation was "not attached to Mr. Smith's declaration or otherwise filed with the Court" to support Mr. Smith's assertion that his declaration is "based upon his review of CICs membership enrollment data." *Id.* Second, as here, the Smith Declaration was "dedicated to describing what Plaintiff **would have encountered** as she signed up [...] but it **does not describe what Plaintiff actually**

10

**encountered**." *Id.* at *11 (emphasis added). Third, as here, Mr. Smith declared that the plaintiff had clicked the order "button, which indicated his acceptance [...]. But Mr. Smith's declaration does not indicate he knows this. Rather, he **assumes** Plaintiff clicked the [button] […] [because clicking the button is] ordinarily what is required to sign up for an account." *Id.* at *11-12 (emphasis added) Finally, the *Newton* court found that, as here, "**nothing in [the] attachments [to the Smith Declaration] indicate[] Plaintiff's assent to the Terms of Use Agreement.**" *Id.* at *15 (emphasis added). These shortcomings in the Smith Declaration created "a genuine dispute about whether [plaintiff] in fact assented to the arbitration agreement." *Id.* at *16.

A similar result was reached in *Lamonaco*, where the district court noted that Experian's employee-affiant's testimony was "all 'habit and practice[]'" and found that the "statements about [plaintiff's] actions manifesting assent [were] mere inferences[.]" 2024 U.S. Dist. LEXIS 71551, at *12 (quoting *Steve Owren, Inc. v. Connolly*, 877 So. 2d 918 (Fla. Dist. Ct. App. 2004)).

Smith's declaration amounts to nothing more than a statement from Experian to this Court that: "trust us, our business records establish an agreement to arbitrate even though we cannot or will not find and show you those records." This is insufficient evidence upon which to find that Experian has carried its burden of proving contract formation so convincingly that there exists "no genuine issue of fact concerning the formation of the agreement […]." *Three Valleys Mun. Water Dist.*, 925 F.2d 1136, 1141 (9th Cir. 1991). As one federal district court has fittingly noted:

> a lawsuit involves a lot more "show me" than "tell me." "Move along, there's nothing to see here," is simply not a very convincing stance. If plaintiffs simply had to believe defendants' and their attorneys' assurances […], there would be a lot of judges looking for other employment. […] The court understands that there's a bit of a "pay no attention to the man behind the curtain" aspect to credit reporting agencies that Experian wants to maintain but, in many cases, that curtain has to be pulled back in litigation. That's how this works under the Rules of Civil Procedure.

*Stagger v. Experian Info. Sols., Inc.*, No. 21 C 2001, 2021 U.S. Dist. LEXIS 220019, at *8-9 (N.D. Ill. Nov. 15, 2021). The Smith Decl. is more "tell me" than "show me" and is inadmissible to

11

resolve the material issue of whether the arbitration agreement was formed. As the Smith Decl. is the **sole** evidence put forward by Experian to support its summary judgment burden, the Motion must therefore be denied.

> **B. Smith's Foundationless Statements Fail to Demonstrate that Plaintiff Assented to the "Clickwrap" Arbitration Agreement at Issue.**

Contracts formed on the internet come primarily in two flavors: 1) "clickwrap" agreements, in which website users are required to click on an "I agree" box after being presented with a list of terms and conditions of use; and/or, 2) "browse-wrap" agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen. *In re HomeAdvisor, Inc. Litig.*, No. 16-cv-01849-PAB-KLM, 2019 U.S. Dist. LEXIS 158594 (D. Colo. Sep. 17, 2019). Here, Experian seeks to enforce an agreement that blends these flavors, with a "browsewrap" hyperlink that leads to a lengthy "Terms of Use" documents containing, in relevant part, an arbitration agreement embedded in the purported terms above a "clickwrap" "I agree" button.

As one district court noted, "[c]lick-wrap contracts like the one at issue here pose special risks of fraud and error," particularly because "[w]hen one of the contracting parties has exclusive control of the electronic record, which is the case in many consumer online transactions, that party is in a position to produce a document that meets its current preferences and needs." *Dillon v. BMO Harris Bank, N.A.*, 173 F. Supp. 3d 258, 266 (M.D.N.C. 2016). *Dillon* further recognized that, apart from fraud, "there is a risk of error in the production of a document from the bowels of an electronic record-keeping system, which may include agreements whose terms and electronic clickthrough procedures varied over time." *Id.* All the concerns identified by *Dillon* exist here, including the further risk of error necessarily present "when the party maintaining the records and

12

the party producing the records are not the same." *Id.* Experian produces the records here in support of its Motion from a third-party – ECS – and offers a witness from ECS, not Experian.

Even if the Court were to accept wholesale Smith's unsupported and speculative testimony as to what the Plaintiffs "would have" seen and done over four years ago, the clickwrap agreement described therein is insufficient to establish mutual assent from users under the laws of Colorado. In Colorado, mutual assent is an elementary requirement for a binding contract. *Ragab,* 2015 U.S. Dist. LEXIS 148301.

As the *Austin* court recently found, the webform utilized by ECS in obtaining arbitration agreements from unsuspecting consumers fails to provide such notice. Relying on the reasoning in *Sgouros v. TransUnion Corp.* (817 F.3d 1029 (7th Cir. 2016)) – a Seventh Circuit opinion concerning a similar website maintained by Experian's competitor, Trans Union, LLC ("Trans Union") – Judge Payne found that Experian's website not only failed to provide notice sufficient for a finding of assent on the part of the consumer, but that it was also **deliberately misleading**. *See* Ex. 3, at 22 (finding that the declaration from Smith "establishes that the process that [Experian] use[s] **lure[s] consumers** to a sister company's website for the purpose of allegedly receiving a free credit report.") (emphasis added).

In *Sgouros*, the Seventh Circuit held that a clickwrap agreement – including its arbitration agreement – could not be enforced, and largely came to that conclusion because, like Experian, Trans Union advertised the promise of a free credit report to lure consumers into binding arbitration terms. *See generally*, *Sgouros* 817 F.3d 1029. The Seventh Circuit agreed with the district court's analysis that it was not reasonable to believe an average user would understand that by clicking, the consumer was agreeing to a service agreement which was both obscured and

13

mislabeled, and that the consumer therefore could not be found to have mutually assented to the Trans Union contract. *Id*. at 1036.

In *Sgouros* – like here – nothing **required** the consumer to first click on the box containing the arbitration agreement, nor to scroll down to view the complete contents of the same, nor did the sign-up process call the consumer's attention to any arbitration agreement. *Id*. Further, the Seventh Circuit held that the language following the hyperlink to the terms actually distracted the consumer by listing what appeared to be a summary of the terms or agreement about the website. *Id*. The text, according to the Seventh Circuit, "said nothing about contractual terms." *Id*. at 1035. No reasonable person would think that hidden within that disclosure was also the message that the same click constituted acceptance of the service agreement. *Id*.

As noted by Senior Judge Payne, the process found lacking by the Seventh Circuit was "essentially the same as to the process relied on by Experian." Ex. 3 at 23. Here, the Plaintiffs alleged assent to the arbitration agreement was secured, according to Smith, by the Plaintiffs clicking on a button which stated, "Create Your Account." *See* Smith Decl., at Exhibit 1 (screenshot of the CreditWorks sign-up page as Smith asserts, with no personal knowledge, it would have appeared to Plaintiffs in 2020. Above this button is a paragraph of "fine print" wherein ECS's webpage notes that "[b]y clicking [the button]: I accept and agree to your Terms of Use Agreement […]." *Id.* However, as was the case in *Sgouros*, this limited mention of the terms of use hyperlink is followed by **actual** "terms" that any reasonable reader would assume summarized the referenced agreement. *Id.* Specifically, the paragraph indicates that submitting the order will "authorize Consumerinfo.com, Inc. […] to obtain [the consumer's] credit report and/or credit score(s), on a recurring basis […]." *Id.* As Judge Payne noted in *Austin*, this language is functionally indistinguishable from the text that the Seventh Circuit found harmful and confusing

14

in *Sgouros*, and as the Seventh Circuit explained, "that text distracted the purchaser from the service agreement by informing him that clicking served a particular purpose unrelated to the agreement." *Sgouros*, 817 F.3d at 1036. Here, the majority of the "fine print" above the "Create Your Account" button which Plaintiffs allegedly clicked explains that submitting the order will authorize ECS to obtain and utilize Plaintiffs' personal information, all for purposes of credit monitoring. *See* Smith Decl., Exhibit 1. So too does the table describing what products the consumer is supposedly "get[ting]" by "Register[ing]." *Id.* A consumer would view the totality of this information and reasonably conclude that the "fine print" was a **summary** of the "Terms of Use Agreement" briefly noted in that section. *Id.*; *see also*, *Sgouros*, 817 at 1036 (finding that language following a hyperlink to the terms distracted the consumer by listing what appeared to be a summary of the terms or agreement about the website.).

Experian has failed to prove that the "contractual terms" it wishes to enforce which are "necessary to eliminate any uncertainty as to the consumer's assent to **those very terms** when checking a box or clicking a button." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 870 (9th Cir. 2022) (Baker, J., concurring) (cleaned up). To the contrary, a reasonable consumer would have **no idea** that they were waiving their right to a jury trial by pulling their credit report, as the bullet point summary of the terms and conditions directly following the hyperlink said **nothing** about an arbitration agreement or limitation on the right to a jury trial. Thus, even if the Court were to accept Smith's speculative statements about what happened over four years ago at a place where Smith was not present, with no documentary evidence – which Experian promises exists – produced supportive of these statements, the clickwrap agreement allegedly obtained by ECS from the Plaintiffs is insufficient to support a finding that the Plaintiffs were "on constructive notice of the contractual terms" at issue. *Id.*

Accordingly, Experian fails to meet its burden to establish that an enforceable arbitration agreement exists, and its Motion must be denied.

## IV. CONCLUSION

Accordingly, the Plaintiffs respectfully request that the Court deny Experian's Motion with prejudice. Alternatively, the Plaintiffs request that the Court deny Experian's Motion without prejudice and direct the parties to conduct discovery into contract formation.

RESPECTFULLY SUBMITTED on February 14, 2025.

/s/ James Ristvedt
James Ristvedt, AZ Bar #035938
CONSUMER JUSTICE LAW FIRM PLC
8095 N. 85th Way
Scottsdale, AZ 85258
E: jristvedt@consumerjustice.com
T: (480) 626-1956
F: (480) 613-7733

*Attorneys for Plaintiff,*
*David & Alisa Colombia*

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2025,, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

By: */s/ Shaun Pambid*