**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-02522-NYW-SBP

DAVID COLOMBIA and
ALISA COLOMBIA,

Plaintiffs,

v.

EXPERIAN INFORMATION SOLUTIONS, INC., and
SENTRY CREDIT, INC.,

Defendants.

---

**ORDER**

---

**Susan Prose, United States Magistrate Judge**

Nonparty LivCor, LLC's ("LivCor") has filed a Motion to Partially Quash Subpoena Pursuant to Fed. R. Civ. P. 45(d)(3) (ECF No. 72) (the "Motion" or "Motion to Quash"), issued by Plaintiffs David and Alisa Colombia. The Motion is referred to this court. *See* ECF No. 18 (order referring case); ECF No. 73 (memorandum referring motion). The court has carefully reviewed the Motion and related briefing, *see* ECF No. 80 (Plaintiffs' response); ECF No. 87 (LivCor's reply), the entire docket, and the applicable law, and now respectfully **ORDERS** that the Motion to Quash is **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

Plaintiffs lived in an apartment complex called Briargate on Main ("Briargate") from

April 2022 to May 2023. ECF No. 1 ¶¶ 49-50.[1] At the time Plaintiffs moved out, they did not owe Briargate any money and, in fact, received a refund upon their departure. *Id.* ¶ 50.

In early May 2024, Plaintiffs reviewed their credit reports and discovered that Defendant Experian Information Systems, Inc. ("Experian"), and Trans Union LLC, [2] both of which are credit reporting agencies, reported a "collection account" in the amount of $1,782 with Defendant Sentry Credit, Inc. ("Sentry"), a collections agency. *Id.* ¶¶ 51, 54. The original debtor on the collection account was identified as Briargate. *Id.* ¶ 53. According to Plaintiffs, Briargate informed them that it "had accidentally sent accounts belonging to thousands of current and past tenants to collection by mistake and that Briargate was in the process of correcting the issue." *Id.* ¶ 56. Plaintiffs allege that they suffered negative consequences as a result of the credit reporting error, including making "it practically impossible for Plaintiffs to continue to obtain [or] rent an apartment." *Id.* ¶¶ 109-148, 178-197.

In this lawsuit, Plaintiffs bring claims against Experian and Sentry under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*. and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq. Id.* ¶¶ 203-34. They seek relief in the form of a declaratory judgment that Defendants "negligently and/or willfully violated the FCRA"; a declaratory judgment that Sentry violated the FDCPA; and "actual, statutory, and punitive

---

[1] Although unclear from Plaintiffs' pleading, the court understands Briargate to be located in Parker, Colorado. *See* Briargate on Main, https://www.elevatetobriargate.com, last accessed August 23, 2026; *see also Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting*, 127 F.4th 178, 183-84 (10th Cir. 2025) (approving courts taking judicial notice of facts which are "public information that is not reasonably subject to dispute").
[2] Plaintiffs and Trans Union, a former defendant in this case, reached a settlement. ECF Nos. 22, 25.

damages" as provided under FCRA and FDCPA. *Id.* at p. 34.

On November 4, 2025, Plaintiffs served a subpoena on LivCor pursuant to Federal Rule of Civil Procedure 45, seeking the production of seven categories of documents,[3] and seeking testimony from a corporate witness pursuant to Federal Rule of Civil Procedure 30(b)(6) on ten topics.[4] *See* ECF No. 72-1 ("Subpoena"). LivCor responded by filing the Partial Motion to Quash, accompanied by an affidavit from Patrick Pope, the Director of Litigation at LivCor ("Pope Affidavit"). ECF No. 76 ¶ 3. LivCor, per its description, "is a multifamily rental property asset management company that contracts with property management companies to oversee the operation and performance of assets." *Id.* ¶ 4. But LivCor asserts that it "is not the custodian of 'accounts' related to individual tenants at specific properties for collections or any other

---

[3] "Requested Documents a. All documents/information sufficient to identify ownership/relationship between LivCor and Briargate; b. All communications between you and Sentry Credit Inc. concerning Plaintiffs' account; c. All communications with Briargate on Main and/or Pay Ready about the Plaintiffs' account; d. All records relating in any way to the Plaintiffs' account; e. Any documents referring to the reason for collection on Plaintiffs' account; f. All records relating to any accounts from Briargate on Main and/or LivCor that were referred for collection efforts in 2023 and 2024 in which no debt was owed; and g. All internal communications in which Briargate and/or LivCor discussed accounts that had been referred to collections erroneously." ECF No. 72-1 at 12-13.

[4] "Pursuant to Federal Rule of Civil Procedure 45, LivCor must designate and prepare one or more officers, directors, managing agents, or other persons to testify at deposition as to each of the matters described below: 1. The ownership/relationship between LivCor and Briargate; 2. The relationship between Pay Ready and LiveCor [sic]; 3. Communications with Briargate on Main and/or Pay Ready about Plaintiffs' account; 4. All records relating in any way to the Plaintiffs' account; 5. Communications between Sentry Credit Inc. And LiveCor [sic] concerning Plaintiffs' account; 6. All records relating to any accounts from Briargate on Main and/or LivCor that were referred for collection efforts in 2023 and 2024 in which no debt was owed; 7. Communications, if any, with Plaintiff [sic]; 8. Reasons for collecting on Plaintiffs' account; 9. All internal communications in which Briargate discussed accounts that had been referred to collections erroneously; and 10. Documents produced pursuant to this subpoena." *Id.* at 20.

purposes." *Id.* ¶ 6. Mr. Pope further stated that the property management company overseeing Briargate during the period relevant to the allegations in Plaintiffs' complaint was an entity called Security Properties Residential, or "SPR." *Id.* ¶ 7. SPR's tenure as the property management company continued through August 7, 2024, *id.*, after the collection accounts were located on Plaintiffs' credit report in May 2024.

Mr. Pope states that he directed LivCor employees who worked on the company's "Strategic Platforms" business team to search for some—but not all—documents and communications that would be responsive to the Subpoena. *Id.* ¶ 8. The employees were directed to use the following search parameters: "Colombia, "David Colombia," and "Alisa Colombia," *Id.* ¶ 8.a., and the search was not limited as to time in order "to ensure that all potentially responsive documents were identified." ECF No. 72 at 5. Mr. Pope, however, does not identify the LivCor custodians whose information was searched, and it is likewise unclear from his Affidavit what types of documents (including, for example, emails) the "Strategic Platforms" business team obtained. Mr. Pope concludes by stating that "[n]o documents or communications responsive to Plaintiffs' subpoena were found in LivCor's business records relating to Plaintiff's [sic] collections account with either Sentry Credit Inc and/or Pay Ready," ECF No. 76 ¶ 9, which the court understands to be a platform that assists operators of multifamily housing units with revenue management. *See* Pay Ready, https://www.payready.com, last accessed August 24, 2026.

Mr. Pope's assertion may be correct, so far as it goes. But it is clear from the Pope Affidavit that LivCor preemptively restricted its search for documents to those that expressly reference Plaintiffs by name. ECF No. 76 ¶ 8.a. The Subpoena, however, sought a broader range of documents than that. It also expressly requested the following categories of documents in

which the name "Colombia" would not necessarily appear:

a. All documents/information sufficient to identify ownership/relationship between LivCor and Briargate;

f. All records relating to any accounts from Briargate on Main and/or LivCor that were referred for collection efforts in 2023 and 2024 in which no debt was owed; and

g. All internal communications in which Briargate and/or LivCor discussed accounts that had been referred to collections erroneously.

ECF No. 72-1 at 12-13. Thus, LivCor's proclamation that there are "[n]o documents or communications responsive to Plaintiffs' subpoena," ECF No. 76 ¶ 9—and, by implication, that LivCor has fully complied with the document-production aspect of the Subpoena—is unsupported in the record before the court. Notwithstanding this disconnect in the record, Plaintiffs do not directly challenge LivCor's response to the document-production aspect of the Subpoena. *See generally* ECF No. 80.

LivCor builds on its self-selected definition of the scope of relevant documents in seeking to quash the deposition component of the Subpoena. LivCor argues that its confirmation that it has no records in which Plaintiffs' names are delineated necessarily renders a Rule 30(b)(6) deposition unduly burdensome, a concept it purports to evaluate pursuant to the factors set forth for assessing stays of discovery derived from *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006) (establishing a five-factor balancing test for assessing the propriety of stays of discovery). *See String Cheese*, 2006 WL 894955, at *6 (citing *Ward v. Acuity*, No. 21-cv-00765-CMA-SKC, 2023 WL 7220982, at *1 (D. Colo. Nov. 1, 2023) (applying the *String Cheese* factors in evaluating a stay of discovery)). An

analysis of the *String Cheese* factors, LivCor asserts, compels a finding that a deposition focused as it would be on "hypothetical and nonexistent information" necessarily amounts to an undue burden. *Id.*

Plaintiffs respond that the record is more nuanced and complex than LivCor would have it. They contend that a deposition of a LivCor representative is not rendered irrelevant merely because LivCor claims to have located no documents responsive to the document portion of the Subpoena. As support for their position, Plaintiffs point to deposition testimony of representatives of Sentry and Pay Ready.

Starting with the Rule 30(b)(6) designee for Sentry, that witness provided testimony (1) indicating that LivCor operates Briargate and did operate Briargate at the time Plaintiffs' account was sent to collections, *see* ECF No. 80-1 at 41:20-42:6; (2) stating her belief that there was a "work agreement" between LivCor and Sentry, *id.* at 165:25-167:23; (3) explaining that LivCor conveyed to Sentry that it wanted collection activities suspended on certain accounts, *id.* at 188:21-189:21; and (4) conveying that there were ongoing communications with LivCor regarding the status of certain tenant accounts and that LivCor wanted certain accounts put on hold, *id.* at 190:24-192:22. Specifically, as to LivCor and the alleged request for "holds," the witness testified:

> Q. I want to ask you about Sentry-60. There's these notes on February 12, 2024. It says, "Account placed on hold for LivCor, soft touch review, do not work until review has been completed and client hold has been released." Do you see that?
>
> A. I do.
>
> Q. What is the meaning, or why was this account placed on hold?

A. **So this was part of a broader group that LivCor wanted – you know, wanted collection activities suspended on, or just, you know, held**. So, no outbound calls, is all that meant.

*Id.* at 188:21-189:7 (emphasis added).

The Pay Ready representative had this to say regarding LivCor:

Q. Okay. Sounds good. So, I just had a few follow up questions based on what we had talked about already thus far. So, I wanted to know **who originally sent the request to Pay Ready to collect on David Colombia's account**. Was it – who was it?

A. **LivCor**.

*Id.* at 95:21-96:1 (emphasis added). And when asked, "Did LivCor send Pay Ready the original request to send David Colombia's account to collection?" the Pay Ready representative responded, "Yes." *See id.* at 98:24-99:1. The Pay Ready representative also testified that LivCor was the property management company at the time that Plaintiffs' account was sent for collection, *id.* at 114:14-23, and that LivCor directed Pay Ready to communicate to Sentry that LivCor accounts were put on hold:

Q. Okay. Do you know why Pay Ready communicated to LivCor that accounts were put on hold, or can – why it communicated to Sentry that the accounts were – that the LivCor accounts were put on hold?

A. It was, I assume, the direction of LivCor.

Q. Okay. And LivCor – in order to send this information out to Sentry that we're looking at, **Pay Ready would have received information from LivCor first, correct, telling it to put the LivCor accounts on hold**?

A. **Yes**.

*Id.* at 102:2-11.

LivCor disputes the accuracy of the testimony of the Sentry and Pay Ready Rule 30(b)(6) deponents, asserting that it is "overstate[d] and "glosses over" their alleged "uncertainty, lack of firsthand knowledge, and reliance on assumptions drawn from later document review—not contemporaneous involvement." ECF No. 87 at 6. In LivCor's view, this testimony does not constitute "clear, non-speculative evidence that LivCor directed any collection action or was the property management company during the relevant time period." *Id.* at 7.

LivCor's view of the record ultimately may be vindicated, but contesting the strength and implications of the evidence is the *raison d'être* of the litigation process. At the discovery stage of the case, Plaintiffs are not compelled to unquestioningly accede to LivCor's characterization of the scope of relevant evidence, and they point to sufficient information indicating that LivCor played *some* role in the erroneous reporting of Plaintiffs' "collection accounts," the impetus for this litigation. The court finds that a deposition of a LivCor designee, consistent with the terms delineated below, falls within the parameters of relevant and proportional discovery and does not transgress the line into unduly burdensome.

## ANALYSIS

### A. Legal Standards

***Rule 45 subpoenas.*** "A party may issue a deposition subpoena to a corporation under Rule 30(b)(6) and Rule 45," *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 2101251, at *8 (D. Kan. Apr. 30, 2020), as Plaintiffs have done here. The legal framework guiding the court's analysis is therefore focused on Rule 45, which directs that this court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden." Fed. R. Civ. P.

45(d)(3)(A), (iii), (iv). A party seeking to quash a subpoena carries "a particularly heavy burden," as opposed to one seeking only limited protection. *In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 669 F.2d 620, 623 (10th Cir. 1982). The objecting party must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (citation omitted).

The court also takes into account that "a subpoena is bound by the same [Federal Rule of Civil Procedure 26(b)] standards that govern discovery between the parties, and, to be enforceable, a subpoena must seek information that is relevant to a party's claims or defenses and proportional to the needs of the case." *Oransky v. Martin Marietta Materials, Inc.*, No. 18-cv-00266-MSK-NRN, 2018 WL 11514384, at *1 (D. Colo. Sept. 7, 2018); *see also, e.g.*, *GSL Grp. Inc. v. Travelers Indem. Co.*, No. 18-cv-00746-MSK-SKC, 2020 WL 12813087, at *2 (D. Colo. May 27, 2020) ("Although Rule 45 does not specifically include relevance or overbreadth as bases to quash a subpoena, the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b).") (citing 9A Wright & Miller, *Federal Practice and Procedure* § 2452 (3d ed. 2008)). In assessing proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). As to relevance, "[r]elevance is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Carlson v. Colo. Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 277 (D. Colo. 2022) (citation modified). "The party seeking production has the

initial burden of showing relevance." *Id.*; *see also Erickson v. City of Lakewood*, No. 19-cv-02613-PAB-NYW, 2021 WL 4947231, at *3 (D. Colo. Sept. 23, 2021) (recognizing that "the topics of a Rule 30(b)(6) examination . . . must be relevant") (citing *Von Schwab v. AAA Fire & Cas. Ins. Co.*, No. 14-cv-00183-CMA-NYW, 2015 WL 1840123, at *2 (D. Colo. Apr. 21, 2015) (discovery directed at irrelevant matters "imposes a *per se* undue burden")).

"In determining whether a subpoena imposes an undue burden under Fed. R. Civ. P. 45(d)(3)(A)(iv), the court weighs the burden to the subpoenaed party against the value of the information to the requesting party." *Nutritional Biomimetics, LLC v. Empirical Labs Inc.*, Nos. 16-cv-01162-KMT & 17-mc-00043-KMT, 2017 WL 6945030, at *2 (D. Colo. Aug. 4, 2017) (citing *King v. Solvay S.A.*, No. 14-mc-00196-LTB-KLM, 2014 WL 4267457, at *2 (D. Colo. Aug. 28, 2014)). "Factors considered in determining whether a subpoena is unduly burdensome include non-party status, relevance, the issuing party's need for the discovery, and the breadth of the request. The party seeking to quash the subpoena bears the burden of proving that it is unduly burdensome." *Oransky*, 2018 WL 11514384, at *1 (citations modified).

Ultimately, the court's decision on a motion to quash is "within the broad discretion of the trial court, and [the Tenth Circuit Court of Appeals] will not disturb [it] absent 'a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *Kenno v. Colo. Governor's Off. of Info. Tech.*, Nos. 21-1353 & 21-1434, 2023 WL 2967692, at *7 (10th Cir. Apr. 17, 2023) (quoting *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1386 (10th Cir. 1994)), *cert. denied*, 144 S. Ct. 696 (2024); *Prisbrey v. State Auto Ins. Cos.*, No. 4:21-cv-124, 2023 WL 4745106, at *2 (D. Utah July 25, 2023) (observing that "motions to quash are left to the discretion of the court"); *see also S.E.C. v.*

*Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (the court reviews discovery rulings for abuse of discretion).

***Rule 30(b)(6) depositions.*** The procedures for deposing a corporate party are governed by Rule 30(b)(6). Rule 30(b)(6) requires the party noticing the deposition to "describe with reasonable particularity the matters for examination," *id.*, and "a measure of specificity tailored to the facts of the case is required when crafting the topics for a Rule 30(b)(6) deposition." *Preitauer v. Am. Fam. Mut. Ins. Co., S.I.*, No. 20-cv-00845-RM-SKC, 2020 WL 7711325, at *1 (D. Colo. Dec. 29, 2020). The topics must be framed in such a manner "as to ensure that the party subject to notice is able to properly designate and educate a representative witness to provide competent and accurate testimony on behalf of the company." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, No. 10-cv-02139-MSK-NYW, 2015 WL 3635422, at *4 (D. Colo. June 11, 2015). Where the defendant "cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000). The scope of a Rule 30(b)(6) deposition is limited by the relevance and proportionality standards of Rule 26(b)(1). *See Chadwell v. United States*, No. 20-1372-JWB-BGS, 2024 WL 1834560, at *5 (D. Kan. Apr. 26, 2024) ("Determining whether the topics or definitions in a Rule 30(b)(6) deposition notice is an undue burden is a case-specific inquiry that requires consideration of factors such as relevance, proportionality, and the breadth of the topic or definition at issue.")).

Informed by these standards, the court turns to the instant Motion.

**B. Application**

LivCor moves to partially quash the Subpoena to the extent that it requires a deposition pursuant to Rule 30(b)(6). ECF No. 72 at 2. In the alternative, LivCor requests that the court

modify the Subpoena to preclude Plaintiffs from deposing its corporate representative regarding the contents of business records which it asserts do not exist and about LivCor's business operations and debt collection practices. *Id.* at 7.

***Relevance and proportionality.*** Plaintiffs contend that the discovery sought via deposition testimony is relevant and "crucial to understanding the chain of events that led to the erroneous collection account being reported against [them]." ECF No. 80 at 9. They reason that LivCor possesses certain information concerning its relationship with Briargate and the processes governing tenant collections that is not available to Plaintiffs through other sources. *Id.* LivCor attempts to rebut these arguments by noting that the topics listed in the Subpoena are not tailored to the claims brought in this action because the Subpoena broadly seeks information regarding ownership interests and the relationship between LivCor and Briargate, all records relating to Plaintiffs' account, and any communications with Plaintiffs. ECF No. 87 at 3. LivCor questions the accuracy of the testimony of the Sentry and Pay Ready representatives and again asserts that SPR was the property management company that oversaw Briargate during the relevant time period and that SPR is, therefore, the proper records custodian. *Id.*

While the court gives weight to the Pope Affidavit, it finds that Plaintiffs have provided adequate evidence indicating a possible link between LivCor and the erroneous reports such that this court will not absolve LivCor of the obligation to provide a Rule 30(b)(6) deposition. As set forth in detail above, Plaintiffs have provided sworn deposition testimony from both Sentry and Pay Ready, which tends to establish that LivCor likely has knowledge relevant to this action. *See* ECF Nos. 80-1, 81. To reiterate the key points from Sentry's sworn deposition testimony, (1) Sentry's representative believed LivCor to have operated Briargate and that there may have been

a contract between Sentry and LivCor; (2) a contract, if one existed, would have been provided in discovery and requested by Plaintiffs; and (3) LivCor possibly had directed the suspension of the collection activities on certain accounts. ECF No. 80-1 at 41:20-42:12; 165:25-167:23; 188:21-189:21; 190:24-192:22. Plaintiffs also proffered the sworn deposition testimony of a representative of Pay Ready, who testified (1) that LivCor was the corporate entity who initially sent the request to Pay Ready to collect on Plaintiffs' account and (2) that LivCor was the property management company *at the time Plaintiffs' account was sent for collections*. ECF No. 81 at 95:21-96:1; 114:14-116:2. Indeed, Pay Ready's Rule 30(b)(6) designee affirmatively identified LivCor, not SPR, as the entity responsible for sending Plaintiffs' accounts to collection. *Id.* at 43:2-44:17. She also testified that LivCor asked that collection activity be suspended on certain accounts, including Mr. Colombia's. *Id.* at 94:2-17.

Although LivCor generally denies these allegations, the court is satisfied that this sworn testimony establishes a genuine dispute as to LivCor's involvement, if any, in the operations of Briargate and the erroneous reports at the heart of this matter. The fact that LivCor thinks that the testimony of the Sentry and Pay Remedy witnesses is inaccurate does not compel the conclusion that the discovery should not be had; indeed, it if is inaccurate, testimony from a LivCor designee will clear up any misconceptions on those points.

On the other hand, any testimony pertaining to LivCor that does not relate to those erroneous reports is not likely to be relevant to Plaintiffs' claims or proportional to the needs of the case. *See Echostar Commc'n Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998) ("Courts are required to balance the needs for discovery against the burdens imposed when parties are ordered to produce information or materials, and the status of a person or entity as a

non-party is a factor which weighs against disclosure." (citing *Am. Standard Inc. v. Pfizer, Inc.*, 828 F.2d 734, 738 (Fed. Cir. 1987))). Accordingly, the court modifies the Subpoena to include only the following topics for testimony:

1. The ownership/relationship between LivCor and Briargate, if any;
2. The relationship between Pay Ready and LivCor, if any;
3. Communications between LivCor and Briargate and/or Pay Ready concerning Plaintiffs' account, if any;
4. Communications between Sentry and LivCor concerning Plaintiffs' account, if any;
5. Requests for suspension of collection activity by LivCor relating to accounts from Briargate in 2023 and 2024;
6. Communications between LivCor and Plaintiffs, if any; and
7. The representations set forth in the Pope Affidavit focused on LivCor's search for documents responsive to the Subpoena.

Inquiry into these topics is warranted based on the representations made in the depositions of Sentry and Pay Ready. And by cabining the topics in this manner, any inquiry into LivCor's business operations or collection practices will be properly tailored to only those details that are relevant Plaintiffs' claims.

***Undue burden.*** LivCor argues that requiring a Rule 30(b)(6) deposition would be unduly burdensome because of its lack of documents responsive to Plaintiffs' requests and because it might be forced to give testimony on its business operations and debt collection practices. ECF No. 72 at 5. Plaintiffs counter that any burden on LivCor would be minimal because: (1) LivCor has information valuable to the case at hand; (2) the deposition would be conducted via Zoom

video conference; (3) the testimony sought is relevant and proportional to the needs of the case; and (4) Plaintiffs have no other way of obtaining the information. ECF No. 80 at 11.

In urging a finding of undue burden, LivCor relies on *United Launch Alliance LLC v. Energia Logistics Ltd.*, a case in which the court ruled against compelling a Rule 30(b)(6) deposition because the requesting party offered "no reason to believe that such [requested] records do exist[.]" *See* No. 15-mc-00043-REB-MJW, 2015 WL 1541022, at *3 (D. Colo. Mar. 31, 2015); *see also* ECF No. 72 at 5. LivCor contends that Plaintiffs' interests in this issue are satisfied by the contents of the Pope Affidavit and the public interest would be served by not burdening the judiciary or any parties or non-parties with unnecessary depositions. ECF No. 72 at 6. The court finds this reliance misplaced.

Unlike the party seeking a deposition in *United Launch*, Plaintiffs have offered substantial evidence indicating that LivCor has some knowledge of the circumstances in which the erroneous reports were created and sent. *E.g.*, ECF No. 81 at 43:2-44:17, 94:2-17, 95:21-96:1; 114:14-116:2. The fact that LivCor may not have documents memorializing that knowledge does not insulate it from producing a Rule 30(b)(6) witness for a properly-noticed deposition. "Rule 30(b)(6) implicitly requires the designated entity representative to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition"—and that includes the nature and results of its investigatory efforts. *In re Application of Michael Wilson & Partners*, No. 06-cv-02575-MSK-KMT, 2009 WL 1193874, at *3 (D. Colo. Apr. 30, 2009) (citing *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* No. 05-2164-MLB-DWB, 2007 WL 1054279, *3 (D. Kan. 2007)), *aff'd sub nom. In re Michael Wilson & Partners Ltd.*, 2011 WL 3608037 (D. Colo. Aug. 16, 2011); *see also, e.g.*, *Ebonie S. v. Pueblo Sch. Dist. 60*,

No. 09-cv-00858-CMA-MEH, 2010 WL 728516, at *3 (D. Colo. Feb. 25, 2010) ("[W]hile the District may not be able to locate documents or an individual having knowledge about the original purchase of the desks, the District remains obligated to provide a witness to testify as to information readily available to the District regarding the purchase, *including the results of its investigation*." (emphasis added)). This court holds LivCor to the same standard. It can prepare a witness to testify concerning the investigation it has conducted, and even if there are no documents to review, there will be LivCor employees to interview from whom information can be gleaned.

On this record, LivCor has not met its burden to show that the burden associated with preparing a Rule 30(b)(6) witness is *undue*. The court appreciates that preparing a designee pursuant to Rule 30(b)(6) imposes some burden on LivCor, but such is always the case with compliance with a subpoena. *See EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993). The court will not deny discovery simply because complying with a subpoena inconveniences a nonparty or subjects it to some expense. *See In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-md-2785, 2019 WL 1004145, at *3 (D. Kan. Feb. 28, 2019). And to the extent the Subpoena may have originally included deposition topics that might have elevated the burden from of the standard or expected stripe to the level of "undue," the court here has set forth limitations to negate that unacceptable level of burden.

Because the iteration of the Subpoena approved by the court seeks relevant, noncumulative, and nonduplicative information that is proportional to the needs of the case, LivCor has not established that producing a corporate representative to testify concerning these narrowed topics would subject it to undue burden. The court therefore grants in part and denies

in part the Motion to Quash and respectfully orders LivCor to adequately prepare and produce a corporate representative to testify in accordance with the parameters set forth in this Order.

## CONCLUSION

Consistent with the foregoing, the court respectfully **ORDERS**[5] that LivCor's Motion to Partially Quash Subpoena (ECF No. 72) is **GRANTED IN PART** and **DENIED IN PART**. Specifically:

(1) The Motion is **GRANTED** insofar as it seeks a modification of the deposition Subpoena limiting the topics therein.

(2) The Motion is **DENIED** insofar as it seeks to quash the deposition Subpoena.

(3) It is **FURTHER ORDERED** that the Rule 30(b)(6) deposition take place but be limited to the topics identified in this Order, namely:

a. The ownership/relationship between LivCor and Briargate, if any;

b. The relationship between Pay Ready and LivCor, if any;

c. Communications between LivCor and Briargate and/or Pay Ready concerning Plaintiffs' account, if any;

d. Communications between Sentry and LivCor concerning Plaintiffs' account, if any;

[5] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1)(A), (B); Fed.R.Civ.P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *see also Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objective and the consequences of failing to object").

e. Requests for suspension of collection activity by LivCor relating to accounts from Briargate in 2023 and 2024;

f. Communications between LivCor and Plaintiffs, if any; and

g. The representations set forth in the Affidavit focused on LivCor's search for documents responsive to the Subpoena.

DATED: August 27, 2026

BY THE COURT:

Susan Prose
United States Magistrate Judge